IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| PROMED, LLC, § | |
| § | |
| Plaintiff, § | |
| § | |
| VS. § | Civil Action No. 3:23-CV-2023-D |
| § | |
| QUINTAIROS PRIETO WOOD § | |
| & BOYER, P.A., § | |
| § | |
| Defendant. § | |

MEMORANDUM OPINION
AND ORDER

In this removed action alleging a claim for breach of contract, plaintiff ProMED, LLC ("ProMED") moves for summary judgment, and defendant Quintairos Prieto Wood & Boyer, P.A. ("QPWB") seeks a continuance under Fed. R. Civ. P. 56(d). For the reasons that follow, the court denies ProMED's motion for summary judgment, denies QPWB's continuance motion under Rule 56(d), and orders QPWB to file a second amended notice of removal that properly pleads diversity jurisdiction.

I

In 2020, at the height of the COVID-19 Pandemic, ProMED entered into a contract ("ProMED Contract") with non-party Luxe Development Corp., LLC ("Luxe") to procure personal protective equipment ("PPE"), i.e., latex gloves.[1] Acting as ProMED's designated

---

[1] In deciding ProMED's motion for summary judgment, the court views the evidence in the light most favorable to QPWB as the summary judgment nonmovant and draws all reasonable inferences in QPWB's favor. *See, e.g., Owens v. Mercedes-Benz USA, LLC*, 541 F.Supp.2d 869, 870 n.1 (N.D. Tex. 2008) (Fitzwater, C.J.) (citing *U.S. Bank Nat'l Ass'n v.*

agent, Luxe entered into a contract ("Purchase Agreement") with non-party ProVantage Healthcare Solutions, Inc. ("ProVantage"), the designated agent of a PPE manufacturer located in Vietnam.

On July 16, 2020 Luxe and ProVantage entered into an escrow agreement ("Escrow Agreement") with defendant QPWB, a law firm. Under the terms of the Escrow Agreement, QPWB agreed to serve as escrow agent with respect to the Purchase Agreement. Regarding the disbursement of funds, the Escrow Agreement provides:

> Upon [QPWB]'s receipt of consistent written instructions from both [ProVantage] and [Luxe], [QPWB] will disburse the Escrowed Funds in accordance with such instructions. . . . Nothwithstanding the foregoing provisions . . . , in the event that [ProVantage] or [Luxe] provides [QPWB] and the other party with a written certification claiming the Escrowed Funds pursuant to certain provisions of the Purchase Agreement, [QPWB], at its absolute and sole discretion, may elect to proceed by:
>
>> (i) notifying [Luxe and ProVantage] that it intends to disburse the Escrowed Funds in accordance with such request unless the non-requesting party delivers a written objection to such requested disbursement within twelve (12) hours after receipt of said notice, and
>>
>> (ii) so disbursing the Escrowed Funds to the requesting party after such 12-hour period, provided the non-requesting party has not objected to such disbursement[.]

P. App. (ECF No. 13-3) at 24. The Escrow Agreement also states that "[QPWB] will be entitled to rely upon the instructions and other matters covered thereby, and will not be

---

*Safeguard Ins. Co.*, 422 F.Supp.2d 698, 701 n.2 (N.D. Tex. 2006) (Fitzwater, J.)).

required to investigate the authority of the person executing and delivering such instructions, or otherwise verify the accuracy of the statements or information presented therein." *Id.*

Between July 2020 and April 2021, through a series of five transactions,[2] QPWB disbursed all of the funds held in the escrow account. According to ProMED, QPWB did not obtain prior written instruction from Luxe: it disbursed the funds at the unilateral direction of ProVantage, and it did not notify Luxe before making the disbursements.

Unbeknownst to QPWB, the PPE that was the subject of the ProMED Contract and Purchase Agreement was never delivered to ProMED. Accordingly, on January 11, 2022 ProMED sued Luxe and Luxe's CEO, Michelle Reulet ("Reulet"), in state court ("First Lawsuit") for breach of the ProMED Contract and for fraud. ProMED and Reulet eventually entered into a settlement agreement under which Reulet assigned to ProMED "whatever claims she and/or Luxe allegedly had arising from the escrow agreement." D. Br. (ECF No. 17-2) at 2. This lawsuit followed.

---

[2]According to ProMED, QPWB wired the funds as follows:

> On July 31, 2020, QPWB wired $95,000.00 out of the escrow account to T-R Construction Import Export. On August 19, 2020, QPWB wired another $348,750.00 out of the escrow account to T-R Construction Import Export. On August 31, 2020, QPWB made a final wire transfer to T-R Construction Import Export of $443,750.00 out of the escrow account. On February 26, 2021, QPWB wired $4,750.00 out of the escrow account to pay itself for serving as the escrow agent. On April 7, 2021, QPWB wired the last of the escrowed funds, $57,750.00 to Advanced Healthcare Solutions, LLC.

P. Br. (ECF No. 12) at 2-3 (footnotes omitted).

On August 2, 2023 ProMED sued QPWB in state court alleging a breach of contract claim based on QPWB's alleged breach of the Escrow Agreement. QPWB removed the case to this court, and, on July 15, 2024—three months prior to the close of discovery[3]—ProMED filed a motion for summary judgment. QPWB opposes ProMED's motion and moves in its opposition to continue and defer ruling on ProMED's motion.[4] The court is deciding the motions on the briefs, without oral argument.

II

As a preliminary matter, the court addresses a defect in QPWB's amended notice of removal.

On September 12, 2023 the court ordered QPWB to file an amended notice of removal to address defects in the pleading of diversity jurisdiction. In its order, the court explained that "[t]he notice of removal alleges that ProMED is a Texas limited liability company, but does not allege the citizenship of each of its members." Order (ECF No. 4) at 2 (bold font omitted). QPWB's amended notice of removal, filed on October 3, 2023, is still defective.

---

[3]Under the court's October 19, 2023 scheduling order, the deadline for completing discovery was October 16, 2024.

[4]QPWB's response to ProMED's motion for summary judgment was due on August 5, 2024. On August 6, 2024 the court granted QPWB's request, via the electronic Help Desk, for an extension of time to respond. QPWB filed its motion to continue and defer ruling and response, subject thereto, to plaintiff's motion for summary judgment on August 9, 2024, but requested again via the electronic Help Desk, and also in a footnote, additional time to supplement this filing. The court granted QPWB's request, and on August 13, 2024, QPWB filed its second motion to continue and defer ruling and response, subject thereto, to plaintiff's motion for summary judgment, which the court presumes supersedes and replaces the August 9, 2024 filing.

In the amended notice of removal, QPWB identifies the former "Manager" and current "Managing Member and Director" of ProMED, but still fails to identify and properly plead the "citizenship of *all* of [ProMED's] members." *Harvey v. Grey Wolf Drilling Co.*, 542 F.3d 1077, 1080 (5th Cir. 2008) (emphasis added).

This defect does not present a trivial technicality to be begrudgingly corrected. Recently, the Fifth Circuit issued a public order remanding an appeal for jurisdictional discovery because the parties had failed to establish the citizenship of limited liability companies in a diversity case under 28 U.S.C. § 1332. *See Megalomedia Inc. v. Phila. Indem. Ins. Co.*, 115 F.4th 657, 660 (5th Cir. 2024) (published order). And there are far too many instances where irreparable jurisdictional defects in diversity cases are not discovered until the case has been fully litigated in the trial court and the case is on appeal. *See, e.g.*, *Settlement Funding, L.L.C. v. Rapid Settlements, Ltd.*, 851 F.3d 530, 532-33 (5th Cir. 2017) ("We are not happy that jurisdiction is a late show-up in this case. Nevertheless, we hold that the plaintiffs have failed to meet their burden of establishing either federal question or federal diversity jurisdiction. In short, the federal courts have no subject matter jurisdiction over this case. We vacate the judgment and remand with directions to remand the case to the state court.").

Accordingly, the court orders that, within 14 days of the date this memorandum opinion and order is filed, QPWB file a second amended notice of removal that properly alleges the citizenship of ProMED by identifying and properly pleading the citizenship of

each of its members.[5]

III

The court now turns to ProMED's motion for summary judgment.

A

When, as here, the summary judgment movant will have the burden of proof on a claim, the movant "must establish 'beyond peradventure all of the essential elements of the claim[.]'" *Bank One, Tex., N.A. v. Prudential Ins. Co. of Am.*, 878 F. Supp. 943, 962 (N.D. Tex. 1995) (Fitzwater, J.) (quoting *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986)). This means that the movant must demonstrate that there are no genuine and material fact disputes and that the movant is entitled to judgment as a matter of law. *See Martin v. Alamo Cmty. Coll. Dist.*, 353 F.3d 409, 412 (5th Cir. 2003). "The court has noted that the 'beyond peradventure' standard is 'heavy.'" *Carolina Cas. Ins. Co. v. Sowell*, 603 F.Supp.2d 914, 923-24 (N.D. Tex. 2009) (Fitzwater, C.J.) (quoting *Cont'l Cas. Co. v. St. Paul Fire & Marine Ins. Co.*, 2007 WL 2403656, at *10 (N.D. Tex. Aug. 23, 2007) (Fitzwater, J.)).

B

ProMED moves for summary judgment on its breach of contract claim, contending that there are no genuine issues of material fact on any of the required elements and that it has "conclusively establish[d]" that QPWB breached the Escrow Agreement. P. Br. (ECF No. 12) at 10. The court disagrees for at least the following reasons.

---

[5]Because it appears that the pleading defect the court has identified can be remedied, and that the parties are in fact diverse citizens, the court will proceed with ProMED's motion for summary judgment.

First, ProMED ignores the choice-of-law provision in the Escrow Agreement, which provides that it "is intended as a contract under the laws of the State of Alabama and will be governed thereby and construed in accordance therewith." P. App. (ECF No. 13-3) at 25. Under Texas choice-of-law rules,[6] "in those contract cases in which the parties have agreed to an enforceable choice of law clause, the law of the chosen state must be applied." *Resolution Tr. Corp. v. Northpark Joint Venture*, 958 F.2d 1313, 1318 (5th Cir. 1992) (citing *DeSantis v. Wackenhut Corp.*, 793 S.W.2d 670, 678 (Tex. 1990)). ProMED has not cited a single Alabama case in support of its motion, much less demonstrated that it is entitled to summary judgment under Alabama, as opposed to Texas, law.[7]

Second, ProMED has not satisfied its heavy burden of establishing beyond peradventure that QPWB breached the Escrow Agreement. ProMED contends that Alan Brenner ("Brenner"), QPWB's corporate representative in the First Lawsuit, admitted that QPWB "did not receive any instruction from Luxe to disburse any of the escrowed funds," and "did not notify Luxe prior to making any disbursements." P. Br. (ECF No. 12) at 9 (quoting P. App. (ECF No. 13-4) at 41-43)). But ProMED fails to address Brenner's

---

[6]"A diversity court applies the choice-of-law rules of the state in which it sits." *Interfirst Bank Clifton v. Fernandez*, 844 F.2d 279, 285 (5th Cir. 1988) (citing *Stuart v. Spademan*, 772 F.2d 1185, 1195 (5th Cir. 1985)). Because this court sits in Texas, it applies Texas choice-of-law rules.

[7]ProMED argues in its reply that QPWB has failed in its response to show how the outcome would be different under Alabama law, but it is *ProMED*, as "the party resisting application of a contractual choice-of-law provision [that] bears the burden to show it does not apply." *Maynard v. PayPal, Inc.*, 2019 WL 3552432, at *4 (N.D. Tex. Aug. 5, 2019) (Fitzwater, J.) (citing *Jimenez v. Sun Life Assur. Co. of Can.*, 486 Fed. Appx. 398, 408 (5th Cir. 2012) (per curiam); *Haynsworth v. The Corp.*, 121 F.3d 956, 963 (5th Cir. 1997)).

testimony that Reulet and Charlene Russo ("Russo"), who signed the Escrow Agreement as Managing Partner of ProVantage, agreed that Russo would provide written instructions "for both parties."[8]  P. App. (ECF No. 13-4) at 37; *see also id.* (Brenner explaining, "I had no direct contact with Michelle Reulet, so when I was told to disburse funds, it came from Charlene Russo with the understanding that she had made those arrangements *and had an agreement from Michelle Reulet*," (emphasis added)); *id.* at 41 (Brenner testifying that "my understanding was that Charlene Russo and Michelle Reulet were in communication, and they had a joint agreement that would be approved to send funds out").[9]  Nor does it establish beyond peradventure that QPWB's conduct was not justified under § 5 of the Escrow Agreement, which provides that QPWB "will be entitled to rely upon the instructions and other matters covered thereby, and *will not be required to investigate the authority of the person executing and delivering such instructions*, or otherwise verify the accuracy of the statements or information presented therein."  P. App. (ECF No. 13-3) at 24 (emphasis

---

[8] To the extent that ProMED argues that QPWB "disbursed escrowed funds over Luxe's direct objection," P. Br. (ECF No. 12) at 12, the evidence suggests with respect to the last two disbursements (i.e., the "paymasters fee and the brokers [fee]," P. App. (ECF No. 13-16) at 117), that QPWB *did* provide notice as required under the Escrow Agreement, and that it proceeded with the disbursement only after determining that "disbursement of escrow funds for the paymasters fee and the brokers are not contingent on the successful eventual shipment of gloves," *id.*  ProMED has not established beyond peradventure that QPWB breached the Escrow Agreement with respect to the final two disbursements.

[9] At the very least, this testimony creates a fact issue on the question whether QPWB wilfully defaulted or acted with gross negligence in performing its obligations under the Escrow Agreement.  *See* P. App. (ECF No. 13-3) at 24 (provision of Escrow Agreement stating that QPWB will not be "liable for any losses, costs or damages it may incur in performing its responsibilities hereunder unless such losses, costs or damages arise out of the willful default or gross negligence of [QPWB] or its agents.").

added).

Accordingly, without suggesting any view on ProMED's ability to establish its claim at trial, the court holds that it has not established, under the heavy "beyond peradventure" standard, that it is entitled to summary judgment. The court therefore denies ProMED's motion. In view of this decision, the court also denies as moot QPWB's motion under Rule 56(d) to continue and defer ruling on ProMED's motion for summary judgement.

\* \* \*

For the reasons explained, the court denies ProMED's motion for summary judgment, denies QPWB's motion to continue and defer ruling, and orders QPWB to file, within 14 days of the date this memorandum opinion and order is filed, a second amended notice of removal that properly alleges ProMED's citizenship.

**SO ORDERED**.

October 24, 2024.

_____
SIDNEY A. FITZWATER
SENIOR JUDGE