#### UNITED STATES DISTRICT COURT
#### NORTHERN DISTRICT OF TEXAS
#### DALLAS DIVISION

| | | |
|---|---|---|
| **PROMED, LLC,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| - vs - | § | CIVIL ACTION 3:23-CV-2023-D |
| | § | |
| **QUINTAIROS PRIETO WOOD & BOYER PA,** | § | |
| | § | |
| | § | |
| **Defendant.** | § | |

### JOINT PRE-TRIAL ORDER

Pursuant to the Court's Scheduling Order [Doc. No. 9], Court's Order Setting Case for Trial [Doc. 8], and Local Rule 16.4 of the Northern District of Texas, Plaintiff ProMED, LLC ("Plaintiff" or "Promed") and Defendant Quintairos Prieto Wood & Boyer, PA ("Defendant" or "QPWB") hereby submit the following Joint Pretrial Order and would respectfully show this Court as follows:

### I.   SUMMARY OF CLAIMS AND DEFENSES BY EACH PARTY

**Plaintiff's Claims:**

This is a simple breach of contract case that revolves around a dispute arising from an escrow agreement, where Defendant QPWB improperly disbursed funds without receiving instructions to do so from the Buyer, Luxe Development, LLC ("Luxe" or "Buyer"), in violation of the provisions of the Escrow Agreement.

Section 4 of the Escrow Agreement explicitly states: *"Upon Escrow Agent's receipt of consistent written instructions from **both** Sellers and Buyer, Escrow Agent will disburse the Escrowed Funds in accordance with such instructions."* After Buyer had deposited funds into the escrow account, Defendant released the funds on five (5) separate occasions—without receiving any written instructions from Buyer (Luxe).

Section 4 of the Escrow Agreement also provides an alternative route for disbursement: *"in the event that Sellers or Buyer provides Escrow Agent and the other party with a written certification claiming the Escrowed Funds pursuant to certain provisions of the Purchase Agreement, Escrow*

*Agent, at its absolute and sole discretion, may elect to proceed by: (ii) so disbursing the Escrowed Funds to the requesting party **after such 12-hour period**, provided the non-requesting party has not objected to such disbursement in accordance with this Section."* Reference to the 12-hour period relates to the portion of Section 4, which states: *"Escrow Agent requests delivery of such instructions at least twelve (12) hours before disbursement is needed."* Once again, Defendant failed to abide by the terms of the Escrow Agreement, by failing to "*request delivery of such instructions at least twelve (12) hours before disbursement [was] needed.*" Stated plainly, Defendant released Buyer's funds without any approval from or notification to Buyer.

The purpose of engaging an escrow agent, is to ensure compliance and mitigate risk through the participation of a neutral third party that will hold the funds/assets and release them only upon both sides agreement. Allowing Defendant QPWB to release the escrow funds based on the unilateral instructions of one party, in violation of the explicit terms of the Escrow Agreement runs in contravention to the entire purpose of engaging an escrow company in the first place.

**<u>Defendant's Defenses</u>:**

Defendant denies all liability to Plaintiff for the purported breach of the Escrow Agreement. More specifically, the Escrow Agreement provided for the following:

*Escrow Agent will be entitled to rely upon the instructions and other matters covered thereby, and will not be required to investigate the authority of the person executing and delivering such instructions, or otherwise verify the accuracy of the statements or information presented therein.*

In line with the Escrow Agreement, Defendant relied upon the directions given to it by the seller's agent. Further, at no time during the disbursement of the funds to the manufacturer did buyer's agent ever reach out to QPWB or challenge and disbursement.

Further, the Escrow Agreement set for limitations of liability on the part of QPWB acting as agent. The Agreement sets for the following:

*Escrow Agent will not be accountable for any incidental benefit, which may be attributable to the Escrowed Funds. Escrow Agent will not owe a fiduciary responsibility to Buyer and Seller, and will be a stakeholder only, and not liable for any losses, costs or damages it may incur in performing its responsibilities hereunder unless such losses, costs or damages arise out of the willful default or gross negligence of Escrow Agent or its agents. Furthermore, and in no way limiting the forgoing sentence, Escrow Agent will not be liable for any loss or damage resulting from the following:*

*a. Any default, error, action, or omission of any other party;*

Defendant contends its actions of disbursing funds did not give rise to any losses complained of by Plaintiff but rather the action or inaction of Plaintiff's own agent and or the manufacturer in the alleged nonperformance of the delivery of goods. Further, any disbursement and action taken by it does not give rise to the required showing by Plaintiff that Defendant's action amount to willful default or gross negligence under Alabama law and it is not liable for the alleged nonperformance of the manufacturer.

In addition, Defendant contends Plaintiff, by taking the claims by assignment, are subject to any claims and defenses of the buyer's agent. In other words, Plaintiff can not avoid the actions or inactions of its own agent under cover of the assignment or be put in a better position by the assignment. The purported assignment was given by a pro se party, on the eve of a disposition hearing and only after the company LLC was found in default for filing to secure counsel to represent itself. In short, the buyer's agent did whatever it could do to minimize her exposure and shift blame elsewhere.

Defendant contends the seller's agent was in constant communications with the buyer's agent throughout the transaction and confirmed with seller's agent when wires needed to be made to QPWB, when the wires need needed to go to the manufacturer, when the gloves would be manufactured and when the gloves would be shipped. Seller's agent never objected to the wires going out and was only interested in the product and declined an offer to refund money.

Defendant also contends that under Alabama law, the serving of an escrow agent can give rise to the need for compliance with the rules governing professional responsibility and the breach of contract claim is asserted to work around the alleged legal malpractice claim, which cannot be assigned and is barred by the applicable statute of limitations.

Plaintiff's attempted interpretation of the Escrow Agreement fails to address the other contract terms which apply the transaction.

## II. PROPOSED STATEMENTS OF STIPULATED FACTS

1. Alan Brenner is the Chief Financial Officer of Quintairos Prieto Wood & Boyer PA, and reports to Eric Boyer, the Managing Partner of Quintairos Prieto Wood & Boyer PA.

2. Luxe Development, LLC is owned and operated by Michelle Reulet.[1]

3. Advanced Healthcare Solutions and ProVantage Healthcare Solutions, Inc. are owned and operated by Charlene Russo.

4. Quintairos Prieto Wood & Boyer PA never received written instructions, regarding the wiring or disbursement of the escrow funds, from Michelle Reulet and/or Luxe Development, LLC.

---

[1] Defendant objects to the inclusion of the proposed stipulated facts as set forth in 2, 3, 12, 13, 22, 24 and 25 to the extent they seek to establish facts absent testimony or evidence to support as to date, there has been none offered or presented. Defendant further objects to the inclusion of these stipulated facts in so much as they are an allegation of Plaintiff and Defendant does not concede to the authenticity or admission of any document referenced in the stipulated fact not properly proven up in accordance with the Federal Rules of Civil Procedure.

5. On July 28, 2020, Luxe Development deposited $475,000.00 USD into the Escrow Account, that was governed by the Escrow Agreement.

6. On July 31, 2020, Quintairos Prieto Wood & Boyer sent TR Construction Import Export $95,000.00 USD from the Escrow Account, that was governed by the Escrow Agreement.

7. On August 19, 2020, Luxe Development deposited $475,000.00 USD into the Escrow Account, that was governed by the Escrow Agreement.

8. On August 19, 2020, Quintairos Prieto Wood & Boyer sent TR Construction Import Export $348,750.00 USD from the Escrow Account, that was governed by the Escrow Agreement.

9. On August 31, 2020, Quintairos Prieto Wood & Boyer sent TR Construction Import Export $443,750.00 USD from the Escrow Account, that was governed by the Escrow Agreement.

10. On February 26, 2021, Quintairos Prieto Wood & Boyer removed $4,750.00 USD from the Escrow Account, that was governed by the Escrow Agreement.

11. On April 7, 2021, Quintairos Prieto Wood & Boyer sent Advanced Healthcare Solutions, LLC $57,750.00 USD from the Escrow Account, that was governed by the Escrow Agreement.

12. Luxe and ProVantage had an agreement for Luxe to buy nitrile gloves from ProVantage.

13. The agreement between Luxe and ProVantage provided that, for any given shipment of gloves, Luxe would pay ProVantage the final payment after receipt of the Bill of Lading and SGS (inspection certificate).

14. Luxe and ProVantage agreed to utilize an escrow agent for the transfer of purchase funds from Luxe to ProVantage as glove shipments were delivered.

15. QPWB agreed to be the escrow agent for Luxe and ProVantage.

16. QPWB, Luxe, and ProVantage signed an agreement, the Escrow Agreement, outlining the duties of QPWB as escrow agent.

17. Under the Escrow Agreement, QPWB agreed to hold the Escrow Funds in a segregated bank account.

18. The Escrow Agreement required QPWB to hold the Escrow Funds deposited by Luxe until QPWB received consistent written instructions from both ProVantage and Luxe to release the funds, at which time QPWB was permitted to disburse the Escrow Funds.

19. The Escrow Agreement permitted QPWB to release the Escrow Funds upon request by just one of the parties only if QPWB notified both Luxe and ProVantage that it intended to make such a disbursement and permitted the parties twelve (12) hours to object to the disbursement before transferring any funds.

20. The Escrow Agreement says that nothing in the agreement can be read to lessen the rights of any party to the agreement.

21. QPWB wired $950,000 from the escrow account in five transactions.

22. Luxe never authorized any payment of the Escrow Funds.

23. QPWB never gave Luxe notice and an opportunity to object to any disbursement of the Escrow Funds.

24. Luxe never received the nitrile gloves that were the subject of its contract with ProVantage.

25. ProMED acquired Luxe's claim for breach of contract from Luxe, which means that ProMED has the legal right to pursue this lawsuit in Luxe's place.

26. The Escrow Agreement included the provision that the Escrow Agent will be entitled to rely upon the instructions and other matters covered thereby, and will not be required to investigate the authority of the person executing and delivering such instructions, or otherwise verify the accuracy of the statements or information presented therein.[2]

### III.   PROPOSED CONTESTED ISSUES OF FACT

The Agreed Jury Charge contains many of the fact issues. Summarizing those fact issues, the parties submit that the contested issues of fact are:

(1) Did Defendant QPWB breach the Escrow Agreement by disbursing the escrow funds without receiving written instructions from the Seller (Luxe Development, LLC)?

(2) Did Defendant QPWB breach the Escrow Agreement by failing to request delivery of written instructions from Seller (Luxe Development, LLC) at least twelve hours before disbursement was needed?

(3) Did Defendant QPWB's breach of the Escrow Agreement amount to willful default and/or gross negligence?

---

[2] Plaintiff objects to the inclusion of the proposed stipulated fact as set forth in No. 26, to the extent it seeks to establish facts absent testimony or evidence to support as to date.

  (4) Was QPWB able to rely on the representations made by Charlene Russo in disbursement of the funds in accordance with the Escrow Agreement?[3]

  (5) Is QPWB liable to Plaintiff for the alleged non-delivery of the good by the manufacturer?

  (6) Is Plaintiff's purported assignment subject to the actions or inactions on the part of its agent?

  (7) Is Plaintiff's breach of contract claim an attempt to circumvent the public policy behind the non-assignment of an alleged legal malpractice claim?

  (8) When did QPWB's alleged breach of the Escrow Agreement occur?

## IV. CONTESTED ISSUES OF LAW

Currently none other than those identified in the Joint Proposed Jury Charge.

## V. ESTIMATE LENGTH OF TRIAL

Defendant anticipates the length of trial to be approximately 3-4 days.

## VI. ADDITIONAL MATTERS THAT MIGHT AID IN THE DISPOSITION OF THE CASE

- The parties have agreed to exchange the identification of trial witnesses the day before those witnesses are to be called at trial.

- The parties also may wish to use a presentation to the jury during opening and/or closing arguments using Power Point or another digital application based on the evidence adduced at trial and previously admitted by the agreement of the parties. The parties further agree that any such material will be presented for review to opposing counsel and potential objection prior to publishing same to the jury.

---

[3] Plaintiff objects to the inclusion of the proposed contested issues of fact as set forth in Nos. 4, 5, 6, and 7 to the extent that they are properly situated as contested questions of law and should not be submitted to the jury as questions of fact. Plaintiff further objects to the inclusion of these contested issues of fact and submission of which to the jury, as they are not relevant to the claims and defenses alleged and there is no foundation that establishes these as a proper factual issue rather than a legal determination.

- Finally, the parties have agreed to handle the issue of attorneys' fees, if necessary, through post-trial motion practice.

        Respectfully Submitted,

        **DYKEMA GOSSETT PLLC**

        By: */s/ Israel R. Silvas*
            Israel Silvas
            State Bar No. 24051338
            isilvas@dykema.com
            Maria L. McIntyre
            State Bar No. 24121003
            mmcintyre@dykema.com
            Daniel Hall
            State Bar No.
            dhall@dykema.com
            Comerica Bank Tower
            1717 Main Street, Suite 4200
            Dallas, Texas 75201
            (214) 462-6400
            (214) 462-6401 (Fax)

        **ATTORNEYS FOR PLAINTIFF PROMED, LLC**

        *and*

        */s/ Brent W. Martinelli*
        Frank Alvarez
        State Bar No. 00796122
        Brent W. Martinelli
        State Bar No. 24037037
        **Quintairos, Prieto, Wood & Boyer, P.A.**
        1700 Pacific Avenue, Suite 4545
        Dallas, Texas 75201
        (214) 754-8755
        (214) 754-8744

        **ATTORNEYS FOR DEFENDANT**